UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| KORY C. JACKSON, SR., | ) |
| Plaintiff | ) |
| v. | ) Case No.: 14-1211 |
| VAUGHAN & BUSHNELL MFG. CO., | ) |
| Defendant. | ) |

## O R D E R AND OPINION

Now before the Court is Defendant Vaughan & Bushnell's Motion for Summary Judgment [14]. For the reasons set forth below, the Motion for Summary Judgment is GRANTED.

### PROCEDURAL HISTORY

Defendant moved for summary judgment on April 30, 2015. The Office of the Clerk sent Plaintiff, who is proceeding *pro se*, a notice advising him that his response was due within twenty-one days from the date of service of the Motion for Summary Judgment. On May 15, 2015, Plaintiff filed a Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment alleging that due to a change of address he received the Clerk's notice late, he was having difficulties communicating with opposing counsel, and he was attempting to obtain counsel. Defendant did not oppose Plaintiff's Motion for Extension of Time. The Court granted Plaintiff's Motion on June 12, 2015 and ordered Plaintiff to file his response on or before July 1, 2015. Plaintiff did not file a response or an additional request for an extension of time by July 1, 2015.

**STATEMENT OF FACTS**

Kory C. Jackson, Sr. was an employee at Vaughan & Bushnell MFG. Co., a manufacturing plant, from 2007 to the time of his termination in 2012. All of the hourly jobs in the Bushnell plant are rated according to a job rating system that rates skill level required to perform the job, the amount of effort the job takes, the degree of responsibility assumed when performing the job, and the conditions in which the job is performed. For the majority of his time at Bushnell, Jackson worked as a Grinder in the Grind Department. Mark Fisher was the Foreman in the Grind Department. There were approximately seventeen other Grinders working in the Grind Department at Vaughan & Bushnell. All Grinders received the same hourly rate of $10.63. However, hourly employees had the opportunity to earn incentive earnings in addition to their hourly pay. Jackson regularly received incentive pay during his tenure at Vaughan & Bushnell.

Vaughan & Bushnell adopted and disseminated an Employee Handbook setting forth the policies and procedures for employees. Jackson received a copy of the Employee Handbook and signed a receipt acknowledging the same. Vaughan & Bushnell also had a Harassment Guideline Policy, which the company used to train supervisors and managers on handling matters arising under the Harassment Policy.

On December 24, 2012, Vaughan & Bushnell shut down for the Christmas holiday. The factory reopened on December 26, 2012; however, Jackson did not report to work nor did he notify the plant that he would be absent. Jackson did not report to work or call in December 27-28, 2012. The Employee Handbook states in part

> It is understandable that on occasions it will be necessary for an employee to be absent from work due to personal illness, or family emergency. If you find that it will be necessary for you to be absent, we ask that you get approval from your supervisor in advance. If it is not possible to get this approval in advance, you

>must do so within the first three hours of the start of your shift from which you are absent by directly contacting your supervisor or the personnel manager. If you have not contacted your supervisor or the personnel manager within the first three hours of the start of your shift, your absence will be considered unexcused and so noted in your permanent file.

Employment Handbook, Ex. 4 pp. 26-27. Vaughan & Bushnell terminated Jackson's employment for three unexcused absences. On June 3, 2014, Jackson filed a Complaint alleging he was constructively discharged because of racial harassment he experienced at work and he was paid less than others performing the same type of work due to his race; both in violations of Title VII. The Defendant filed the current Motion for Summary Judgment currently before this Court.

**DISCUSSION**

**I.    Legal Standard**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 2552 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1355-56 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings

and produce evidence of a genuine issue for trial. Celotex Corp., 106 S. Ct. at 2553. This Court must then determine whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. Anderson, 106 S. Ct. at 2511; Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

As indicated above, there is no response to the Motion for Summary Judgment. Therefore, Plaintiff is deemed to have admitted the contents of Defendant's Motion for Summary Judgment, pursuant to Local Rule 7.1(D)(2). See Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006); Gonzalez v. Ingersoll Mill. Mach. Co., 133 F.3d 1025, 1030-1031 (7th Cir. 1998); Reales v. Consolidated Rail Corp., 84 F.3d 993, 997 (7th Cir. 1996). While the Court is sympathetic to Plaintiff because he is proceeding *pro se*, Plaintiff still must abide by the Local Rules. "Although district courts may liberally construe the federal and local rules for pro se litigants, even pro se litigants are obligated to follow those rules." See McNeil v. United States, 508 U.S. 106, 113 (1993); Metro. Life Ins. Co. v. Johnson, 297 F.3d 558, 562 (7th Cir. 2002) 562.

However, "strict enforcement of [Local Rules and deadlines] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." Wienco, Inc. v. Katahn Associates, Inc., 965 F.2d 565, 568 (7th Cir. 1992). Accordingly, the Motion for Summary Judgment will be decided by the Court on the record now before it.

II.   Analysis

    A. Constructive Discharge

Title VII prohibits an employer from engaging in racial harassment that creates a hostile or offensive working environment. See Patterson v. McLean Credit Union, 491 U.S. 164, 180 (1989); Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); Daniels v. Essex Group,

4

Inc., 937 F.2d 1264, 1270 (7th Cir. 1991). To survive a summary judgment motion, an employee alleging racial harassment must show: "(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." Williams v. Waste Management of Illinois, 361 F.3d 1021, 1029 (7th Cir. 2004); see also Mason v. S. Ill. Univ. at Carbondale, 233 F.3d 1036, 1043 (7th Cir. 2000).

Harassment must be both subjectively and objectively offensive. See Scruggs v. Garst Seed Co., 587 F.3d 832, 840 (7th Cir. 2009). Factors to be considered are "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." Id. If harassment is perpetrated by a co-worker, then, in order for there to be employer liability, Plaintiff must show that his employer was negligent in either discovering the harassment or remedying the harassment. See Porter v. Erie Foods Inter., Inc., 576 F.3d 629, 636 (7th Cir. 2009). An employer can avoid liability by responding promptly and appropriately to prevent harassment from recurring through prompt investigation. Id.

It is difficult for a plaintiff to establish a constructive discharge, as "[a]bsent extraordinary conditions, a complaining employee is expected to remain on the job while seeking redress [for Title VII violations.]" Cooper-Schut v. Visteon Automotive Systems, 361 F.3d 421, 428 (7th Cir. 2004). In Rabinovitz v. Pena, 89 F.3d 482, 489 (7th Cir. 1996), the Seventh Circuit set forth the requirements for a claim of constructive discharge:

> To state a claim for constructive discharge, a plaintiff needs to show that his working conditions were *so intolerable that a reasonable person would have been compelled to resign*…The working conditions must be more than merely intolerable; they must be intolerable in a discriminatory way…We have also noted

>    that an employee may not be unreasonably sensitive to his working
>    environment and that *he must seek redress while remaining in his
>    job unless confronted with an aggravating situation beyond
>    ordinary discrimination*.

(Emphasis added); Williams v. Waste Management of Illinois, Inc., 361 F.3d 1021, 1032 (7th Cir. 2004).

Here, it is undisputed Jackson had three unexcused absences, which was a terminable offense pursuant to Vaughan & Bushnell's Employee Handbook. It is well-settled in this Circuit that employers have a legitimate interest in ensuring their employees report to work. See Rush v. McDonald, 966 F.2d 1104, 1114-1115 (7th Cir. 1992)(an employer would be justified in terminating an employee who was absent from work for three days, and who did not give an explanation of the reasons for her absence until she returned); Campbell v. Dominick's Finer Foods, 85 F. Supp. 2d 866, 872 (N.D. Ill. 2000)(employee's absenteeism in and of itself prevented the employee from meeting employer's legitimate performance expectations); Serritella v. Midwest Dental Prods. Corp., 1996 U.S. Dist. LEXIS 12562, 13-14 (N.D. Ill. 1996)(an employee was not meeting her employer's legitimate expectations when she had excessive, unexcused absences).

Plaintiff argues he was constructively discharged because of the racial harassment he was experiencing at work. Plaintiff's constructive discharge claim is premised on two incidents. Both incidents were brought to management's attention on November 8, 2012. On November 8, 2012, Diana Turner, an employee at the factory, approached Human Resources Manager Heikes and informed him that Jackson had posted on Facebook a drawing currently displayed at the plant that he felt was offensive. Heikes went to plant a found the picture. The drawing depicted employee Greg Myers, an anonymous "new employee", and a monkey. The drawing invited the employees to vote on which person depicted should be Mark Fisher's new assistant. Heikes

showed the drawing to Fisher and Vice President Chambers. The three men did not view the drawing as having racial overtones, but rather felt it referred to a comment made by Chambers as Chambers had recently told plant employees that the assistant job was so easy a monkey could do it.

Nevertheless, Heikes, Fisher, and Chambers met with Jackson. Jackson stated that he felt the drawing was racist because it was posted two days after the re-election President Barack Obama. He considered the picture of the money to represent an African-American. Construing the facts in a light most favorable to the Jackson, the Court finds Jackson's claim that he was constructively discharged due to racial harassment fails for several reasons. First, although the drawing was extremely problematic, it does not give rise to a constructive discharge claim. Taking the facts in a light most favorable to Plaintiff, the Court finds Jackson was subject to unwelcome harassment based on his race. However, the Court finds Jackson fails to satisfy the third and fourth prongs of a racial harassment analysis. Here is undisputed that Jackson did not report the drawing incident to his supervisor, rather his supervisor and administrators approached Jackson about it. The drawing was neither directed at Jackson nor did the drawing convey a threat of death or bodily harm. In addition, there is no evidence the drawing altered the conditions of the Jackson's work environment as it was a one-time occurrence and he did not make a complaint to his supervisor, pursuant to the company policy as laid out in the Employee Handbook and he remained at the plant for over two months after the incident happened. Also, fatal to Jackson's claims surrounding the drawing the incident is there is no basis for employer liability. It is undisputed Vaughan & Bushnell took immediate remedial action when they learned about the drawing. The drawing was immediately removed, Jackson's supervisor and company administrators met with him immediately to discuss the incident, and Chambers and Heikes attended every shift meeting at which they advised employees and supervisors to be

respectful of other's feelings, avoid racially offensive activity, and refrain from posting drawings that made fun of another's race.

During the November 8, 2012 meeting Jackson also stated he had been verbally harassed by other employers in the past and that sometime during 2007 or 2008, an employee came up behind Jackson and placed a white sheet over his head. Heikes, Fisher, and Chambers were not aware of the sheet incident and asked Jackson to provide the name of the employer who engaged in this conduct. Jackson would not provide the name at that time. Construing the facts in a light most favorable to the Plaintiff, the Court finds that Jackson was subject to unwelcome harassment based on his race. However, the Court once again finds that Jackson fails to satisfy the third and fourth prongs of a racial harassment analysis. Jackson continued to work at the plant for an additional four years and never reported the one-time incident pursuant to company policy prior to the November 8th meeting. While the incident was offensive there was no evidence suggesting Jackson was unable to perform his work or that his working environment was altered. In addition, Vaughan & Bushnell was unable to take prompt remedial action after the white sheet incident because they were unaware the incident had occurred. See Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 849 (7th Cir. 2008) (in order to establish employer liability for a coworker's harassment, Plaintiff must show he informed the employer of the harassment or that the harassment was so pervasive that a fact-finder could infer employer knowledge. Velez v. City of Chicago, 442 F.3d 1043, 1047 (7th Cir. 2006) (same).

Jackson also alleges throughout his employment, his co-workers made racial slurs and told racial jokes. Again, while the Court finds Jackson was subject to unwelcome harassment based on his race. However, the Court finds that Jackson fails to satisfy the third and fourth prongs of a racial harassment analysis. During his deposition, Jackson was unable to recall when these incidents happened nor does he allege the harassment was severe or pervasive to alter the

conditions of his employment. It is undisputed Jackson reported some of the instances to Fisher. It also undisputed that Fisher took prompt remedial action by verbally reprimanding those involved.

Taking Jackson's allegations as true, the Court finds the actions of Jackson's co-workers offensive and inappropriate. However, they are not enough not to give rise to a racial harassment claim. Given that Jackson's constructive discharge claim is based on the alleged racial harassment he experienced, Jackson's constructive discharge claims must fail and Defendant is entitled to summary judgment on this claim.

### B. Pay Inequality

In his Complaint, Plaintiff also alleges that he did not receive the same rate of pay performing the same work due to his race. However, this claim is baseless because the undisputed facts establish Jackson was receiving the same hourly pay as all the other Grinders. Jackson Deposition, p. 16. Accordingly, the Court need not address this issue any further and Defendant is entitled to the summary judgment on this claim.

## CONCLUSION

For the reasons set forth above, Defendant Vaughan & Bushnell for Summary Judgment [14] is GRANTED. This matter is now terminated, and existing deadlines are vacated.

Entered this 4th day of August, 2015.

/s/ James E. Shadid
James E. Shadid
Chief United States District Judge